FILED
APR 13 2012
APR. 13, 2012
JUDGE VIRGINIA M. KENDALL
U.S DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 10 CR 1052 |
| vs. ) | |
| ) | Judge Virginia Kendall |
| LEO STOLLER ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant LEO STOLLER, and his attorney, JOHN F. MURPHY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with knowingly and fraudulently concealing property that belonged to the estate of a debtor in a Chapter 13 bankruptcy proceeding, in violation of Title 18, United States Code, Section 152(1) (Counts One and Two), and knowingly and fraudulently making a false statement under penalty of perjury in a Chapter 13 bankruptcy proceeding, in violation of Title 18, United States Code, Section 152(3) (Counts Three through Nine).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Nine, which charges defendant with knowingly and fraudulently making a false statement under penalty of perjury in a Chapter 13 bankruptcy proceeding, in violation of Title 18, United States Code, Section 152(3).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Nine of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about December 30, 2005, at Chicago, in the Northern District of Illinois, Eastern Division, defendant LEO STOLLER knowingly and fraudulently made a false declaration, certification and statement under penalty of perjury in a case under Chapter 13 of the United States Bankruptcy Code (Title 11), namely, In re: LEO STOLLER, No. 05 B 64075, in that defendant falsely stated "None" in response to Question #14 of the Statement of Financial Affairs, which required that defendant "[l]ist all property owned by another person that the debtor holds or controls," when, in fact, as the defendant knew, defendant had power of direction over the trust holding legal and equitable title to residential property located at 1212 North Lathrop, River Forest, Illinois ("1212 North Lathrop"), which defendant exercised for his benefit, in violation of Title 18, United States Code, Section 152(3).

2

In particular, prior to March 14, 2005, defendant's mother was living at the 1212 North Lathrop property and was the beneficiary of an Illinois land trust pursuant to which Midwest Bank and Trust Company ("Midwest") held legal and equitable title to the property. Under Illinois law, the beneficial interest in the 1212 North Lathrop property was deemed to be personal property. Defendant's mother passed away on or about March 14, 2005, and, by operation of the trust, defendant became the sole beneficiary of the 1212 North Lathrop land trust. On or about March 15, 2005, defendant assigned his beneficial interest in the 1212 North Lathrop land trust to his daughter without consideration, but defendant reserved a power of direction over the trust for himself and his sister.

Under the power of direction, defendant had the authority to direct Midwest to execute a mortgage to secure a loan secured by the property. Prior to December 20, 2005, defendant had directed Midwest to execute mortgages in favor of First Security Trust & Savings Bank ("First Security") to secure loans in the total amount of $99,000. The proceeds of those loans were deposited into a corporate checking account that defendant controlled at First Security. In addition, in June 2005, defendant leased the 1212 North Lathrop property to a tenant for monthly rent of $2,250, and directed the tenant to make her rental payments by personal check made payable to another corporate entity that defendant controlled.

On or about December 20, 2005, defendant caused to be filed with the United States Bankruptcy Court for the Northern District of Illinois a petition under Chapter 13 of the United States Bankruptcy Code (Title 11 of the United States Code), thereby initiating the personal Chapter 13 bankruptcy case entitled In re: LEO STOLLER, No. 05 B 64075. On or about December 30, 2005, defendant filed various schedules and a Statement of

3

Financial Affairs. At the time that he filed the Statement of Financial Affairs, defendant was aware that a civil judgment against him had been rendered in the Northern District of Illinois and that he was potentially liable for an award of attorney's fees in excess of $400,000.

Defendant intentionally refrained from disclosing in any way his power of direction over the 1212 North Lathrop land trust in any of his bankruptcy filings. Defendant did so in order to prevent the United States Bankruptcy Trustee and any creditors from asserting that the 1212 North Lathrop property should be included as part of defendant's bankruptcy estate. In particular, in response to Question #14 of the Statement of Financial Affairs, which required that defendant "[l]ist all property owned by another person that the debtor holds or controls," defendant, under penalty of perjury, answered "None" when, as he then knew, he held the power of direction over the 1212 North Lathrop land trust, and he was required to disclose his power of direction over the 1212 North Lathrop land trust in response to Question #14 of the Statement of Financial Affairs.

In June 2006, defendant again exercised his power of direction by directing Midwest to execute a mortgage in favor of First Security to secure a loan in the total amount of $150,000. Following re-payment of two earlier First Security loans secured by the 1212 North Lathrop property, the proceeds of the third loan were distributed in the form of a First Security cashier's check in the amount of $50,072.58 made payable to defendant.

On or about September 1, 2006, over defendant's objection, defendant's Chapter 13 bankruptcy proceeding was converted to a Chapter 7 bankruptcy proceeding and a Chapter 7 Trustee was appointed to administer the proceeding. With the approval of the Chapter 7 Trustee, the 1212 North Lathrop property was sold to a third party for approximately $540,000, which was the value of the asset that defendant concealed in his

bankruptcy filings. After deducting costs and expenses, and the satisfaction of an outstanding balance of approximately $154,235.78 for loans that had been secured by the 1212 North Lathrop property pursuant to defendant's exercise of his power of direction, the proceeds distributed to the Chapter 7 Trustee from the sale of 1212 North Lathrop property totaled approximately $341,844.44. Defendant's daughter, who then held complete fee simple title to the 1212 North Lathrop property, objected to distribution of the sale proceeds being distributed as part of the bankruptcy estate. Pursuant to a settlement agreement between the Chapter 7 Trustee and defendant's daughter, the Chapter 7 Trustee distributed approximately $160,000 to defendant's daughter. The Chapter 7 Trustee retained the remaining monies (approximately 53.2% of the total sale proceeds) so that they could be administered as part of the defendant's bankruptcy estate.

## **Maximum Statutory Penalties**

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

    c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

   a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2011 Guidelines Manual.

   b. **Offense Level Calculations.**

   i. Pursuant to Guideline § 2B1.1(a)(2), the base offense level for the offense of conviction is 6.

   ii. Pursuant to Guideline § 2B1.1(b)(1)(H), the offense level is increased by 14 levels because the intended loss was greater than $400,000 but less than $1,000,000.

   iii. Pursuant to Guideline § 2B1.1(b)(9), the offense level is increased by two levels because the offense involved a misrepresentation during the course of a bankruptcy proceeding.

   iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the

government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

  v.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

  c.  **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal one and defendant's criminal history category is I, based upon the following:

  i.  On or about January 10, 1989, defendant was convicted in the Circuit Court of Cook County of resisting or obstructing a police officer and sentenced to six months of court supervision. Pursuant to Guideline § 4A1.2(e), defendant receives zero criminal history points for this conviction. [handwritten: THE defendant does not believe he sustained this conviction] [handwritten initials: JM, LS, ul]

  ii.  On or about November 12, 2009, defendant was convicted in the Circuit Court of Cook County of indirect criminal contempt and sentenced to pay a fine

7

of $500. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 19, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

  f. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the

Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10. Each party is free to recommend whatever sentence it deems appropriate.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12. Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution to the debtor's bankruptcy estate in In re: LEO STOLLER, No. 05 B 64075, in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

13. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 10 CR 1052.

17. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

18. Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant or defendant's partnership or corporations.

### Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights**. Defendant has the right to persist in a plea of not guilty

to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.      If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.      At a trial, whether by a jury or a judge, the government would

be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

20. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing

shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

22. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24. Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

    a. Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and defendant's partnerships or corporations which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

    b. Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure to the Internal Revenue Service of documents, testimony, and related investigative materials that may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the IRS for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative

proceeding involving, or investigation of, defendant or defendant's partnerships or corporations.

## Conclusion

25. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in

this Agreement, to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: April 13, 2012

_____
PATRICK J. FITZGERALD by JSP
United States Attorney

_____
LEO STOLLER
Defendant

_____
TIMOTHY J. CHAPMAN
Assistant U.S. Attorney

_____
JOHN F. MURPHY
Attorney for Defendant