UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 10 CR 1052 |
| v. | ) | |
| | ) | Honorable Virginia M. Kendall |
| LEO STOLLER | ) | |

GOVERNMENT'S SUPPLEMENTAL POSITION PAPER FOR SENTENCING

The United States, by and through its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, hereby submits its supplemental position paper for sentencing in the above-captioned matter, including its objection to the Updated Presentence Investigation Report dated October 1, 2013 ("Updated PSR").

INCORPORATION BY REFERENCE OF ORIGINAL POSITION PAPER FOR SENTENCING

The government filed its original position paper for sentencing on October 15, 2012. Except as otherwise stated below, the government incorporates by reference the arguments set forth in its original position paper for sentencing.

OBJECTION TO THE UPDATED PSR

The Updated PSR modified its prior guidelines calculation by eliminating the three-level reduction for acceptance of responsibility under Guideline § 3E1.1 on the basis that, by filing a motion to withdraw his plea of guilty, defendant acted inconsistently with a full acceptance of responsibility as required by Guideline § 3E1.1. Updated PSR at 1-2. The government respectfully objects to the Updated PSR's modification of its guidelines calculations.

Even though entry of a guilty plea constitutes significant evidence that a defendant has accepted responsibility for his offense within the meaning of Guideline § 3E1.1, no defendant is automatically entitled to a reduction for acceptance of responsibility:

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct) . . ., will constitute significant evidence of acceptance of responsibility for the purposes of [Guideline § 3E1.1(a)]. However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.

Guideline § 3E1.1, comment. (n.3).

In this case, based upon defendant's admissions and conduct up through the date that he entered his plea of guilty pursuant to the written plea agreement (April 13, 2012), the government agreed in the plea agreement that defendant was entitled to a three-level of reduction for acceptance of responsibility pursuant to Guideline § 3E1.1. *See* Record Item ("R.") 58 at ¶ 9(b). The original PSR submitted on August 9, 2012, agreed with Guidelines calculations in the plea agreement. R.63 (lines 183-209, 518-520).

On June 19, 2013, following appointment of new counsel, the defendant moved to withdraw his guilty plea based upon alleged errors in the plea colloquy between this Court and the defendant. R.88. The motion was not accompanied by an affidavit signed by the defendant, but it did generally claim that "because of the complexity of the charges, Stoller would more likely than not have made a different choice if he had been fully informed as to the rights he was relinquishing by entering into this plea agreement."

*Id.* at 6. For the reasons this Court set forth in its written opinion denying that motion, the defendant's change of plea was knowingly and voluntarily entered pursuant to a plea colloquy that was thorough, fair and conducted in accordance with Federal Rule of Criminal Procedure 11. R.98.

The government certainly respects and understands the Probation Officer's conclusion that defendant's attempt to withdraw his guilty plea is inconsistent with full acceptance of responsibility. Indeed, the Seventh Circuit has held that "[a]ttempting to withdraw a guilty plea is grounds for denial of an acceptance of responsibility reduction." *United States v. Anderson*, 19 F.3d 436 (7th Cir. 1994) (unpublished) (citing *United States v. Price*, 988 F.2d 712, 722 (7th Cir. 1993). Still, the grounds for relief asserted in defendant's motion to withdraw his guilty plea consisted entirely of legal arguments related to the sufficiency of this Court's plea colloquy. *See* R.88. The motion was not based upon factual assertions inconsistent with defendant's admissions at the time he pled guilty. *Id.* Thus, in addition to the possibility that the motion reflected defendant's general desire to renounce his prior factual admissions, it is at least equally plausible that the motion was motivated by his new defense counsel's obligation of zealous advocacy and his sincerely held (though incorrect) belief that this Court committed serious legal errors during the course of the plea colloquy.

The government agrees with the Updated PSR's conclusion that some inference of defendant's intent to retract his prior admissions at the change of plea hearing may be drawn from the motion's assertion that it is "more likely than not" that defendant would have pled guilty had he been informed of certain rights that defendant (incorrectly) alleged to have been missing from the Court's plea colloquy. Given the

absence of an affidavit signed by the defendant in support of the motion to withdraw his guilty plea, the assertion that defendant would likely have withdrawn his guilty plea must rest upon the communications between the defendant and his counsel. However, since those conversations are privileged, the exact reasons for the "more likely than not" comment in the motion cannot be clarified beyond the face of the motion itself. Therefore, the government ultimately concludes that the totality of the record fails to establish that defendant's motion, by itself, reflects a personal retraction by the defendant of the facts he admitted at the time of his guilty plea.

Accordingly, the government respectfully objects to the Updated PSR's denial of an acceptance of responsibility reduction based upon defendant's motion to withdraw his guilty plea.

### GOVERNMENT'S SUPPLEMENT POSITION PAPER

The government continues to ask that this Court impose a sentence at the high end of the advisory guidelines range of 30-37 months' imprisonment. In addition to the arguments in favor of a high-end sentence set forth in the government's original position paper, the government submits the following additional facts in aggravation.

In particular, the government submits that there is evidence sufficient to establish by a preponderance of the evidence that defendant falsely exaggerated his alleged mental disorders in an effort to obtain a lower sentence. Following the appointment of defendant's present counsel, defendant was ordered to undergo a neuropsychological examination, which was conducted on April 30, 2013, by Dr. Robert L. Heilbronner. Among other things, the examination involved an interview of defendant and one of his

daughters, as well as the administration of various tests to defendant in order to evaluate his responses.

The report of the examination was dated May 10, 2013, and was transmitted by defense counsel to this Court and the government on May 15, 2013. In summary, as that report makes clear, the defendant exhibited inconsistent symptoms, which at times indicated symptoms associated with the most severe forms of dementia, such as his inability to (a) write his own name without reference to an identity tag he wore around his neck; (b) identify the current President of the United States, (c) repeat numbers forward or backward, of (d) identify the current year. The defendant also expressed a complete lack of understanding with respect to this case, stating that he did not understand why he needed an attorney. When attempting to write a simple sentence, he only issued the incomprehensible words "took boy car blue." The report describes the substantial inconsistency between the symptoms exhibited by the defendant and his ability to perform well in other ways, ultimately concluding that defendants symptoms "appear[] rather suspect, particularly in the context of the current legal proceedings." The report also concluded that defendant "had the capacity to understand the meaning and implications of his plea agreement in April 2012."

The more severe impairments defendant demonstrated during his neuropsychological examination are demonstrably the result of an attempt to use deception in order to appear severely mentally disabled. In particular, on September 16, 2013, defendant, accompanied by his counsel, sat for a follow-up interview with the United States Probation Officer, the substance of which was contained in the Supplemental Report. As reflected in the Supplemental Report, far

from being disoriented as to the most basic facts of his life, defendant was able to speak fluently about, among other things, his family history, the disabilities of his son (for whom defendant claims to be the sole caregiver), his son's educational program, the multiple prescription drugs that defendant takes, the amount of money he receives each month from Social Security, and even the fact that his monthly rental and utility expenses have increased by $121 and $27, respectively. Clearly, as Dr. Heilbronner's report suggests, a person who is so impaired that he cannot spell his own name, identify his address or sequence numbers would be entirely unable to relate such finite details about his life, such as the relative increase in his monthly rent and utility expenses. At no point does the Updated PSR describe defendant as exhibiting any of the symptoms that he presented to Dr. Heilbronner.

Moreover, it is telling that, though defendant's daughter may be temporarily caring for defendant, neither defendant's daughter nor any other member of their family have attempted to have a guardian ad litem appointed for defendant. Had defendant truly been as impaired as he exhibited to Dr. Heilbronner, it is certainly fair to infer that he would be without any ability to take care of himself, and his closest family members do not appear to deem such care necessary.[1] In fact, none of those family members have sought to have another individual substitute for defendant as guardian ad litem for the defendant's disabled son. That is because they know that the defendant is, in truth, fully capable of caring for himself and his son.

---

[1] For example, if defendant was truly unable to sequence numbers and could not remember simple facts (such as the identity of the current President), it is unimaginable that he would be able to even remember the various prescriptions for himself and his son, let alone assure the proper administration of them in terms of timing and dosage.

The inference from these facts is simple: In an effort to appear more mentally impaired than is true, the defendant falsely exaggerated his symptoms at the time of his interview with Dr. Heilbronner in an effort either to (a) establish a factual predicate for an anticipated motion to withdraw his guilty plea on the basis that it was not knowingly and voluntarily made; and/or (b) support a mitigation claim at sentencing.[2] In doing so, the defendant demonstrated his continuing disrespect to the Court, his fearlessness in using deception in furtherance of his own goals, his extreme risk of recidivism, and the need for this Court to impose a custodial sentence toward the high end of the advisory guidelines range.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the defendant be sentenced toward the high end of the advisory guidelines range.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: s/ Timothy J. Chapman
Timothy J. Chapman
Assistant United States Attorney

---

[2] The primary purpose of the examination was to determine whether defendant's neuropsychological status was probative of whether he did or did not enter his guilty plea knowingly and voluntarily. Defendant's deceitful behavior could be deemed an attempt to obstruct justice, but it was so inartfully executed that Dr. Heilbronner was able to identify the inherent contradictions in the defendant's performance. Thus, while it certainly presents a close call, defendant's situation is more akin to the making of false statements that did not materially impede an investigation or sentencing. *See* Guideline § 3C1.1, comment. (n.5) (suggesting that such types of conduct, while not warranting an enhancement for obstruction of justice, nonetheless suggest that a sentence higher in the advisory guidelines range is appropriate). It likewise could be construed as another factor undermining defendant's claim to a reduction for acceptance of responsibility under Guideline § 3E1.1, but the government deems it best to address it as yet another aggravating factor within the range.