UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 CR 1052-1 |
| | ) | |
| LEO STOLLER, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant | ) | |

**DEFENDANT LEO STOLLER'S
SENTENCING MEMORANDUM**

Now comes the defendant, Leo Stoller ("Stoller"), by and through his attorney, John A. Meyer, Meyer & O'Connor, LLC, and respectfully requests that this Court consider the following matters pursuant to 18, U.S.C., §3553(a):

**Introduction**

The original Presentence Investigation Report (PSR) dated August 9, 2012, reduced Stoller's adjusted offense level by 3 levels to account for acceptance of responsibility, resulting in a final offense level of 19 and an advisory guideline range of 30 to 37 months. (PSR, pg. 8, ln. 202-206) However, in an Updated Presentence Investigation Report (UPSR) dated October 1, 2013, the probation officer found that the defendant was not entitled to a reduction in his offense level for acceptance of responsibility for the reason that the "motion to withdraw his plea of guilty is inconsistent with an affirmative acceptance of responsibility." (UPSR, pg. 2, ¶16) Based on a Criminal History Category I, this would yield a final offense level of 22 and an advisory guideline range of 41 to 51 months. (UPSR, pg. 6, ¶37) Both Stoller and the government objected to the UPSR's denial of a reduction for acceptance of responsibility,

contending that nothing contained in the motion to withdraw the plea of guilty was inconsistent with an affirmative acceptance of responsibility. (Doc. 99, 103)

Additionally, the PSR found the defendant has one criminal history point and that his Criminal History Category is Category I. While agreeing that Stoller is in Criminal History Category I, the defendant contends that he has no criminal history points. *See*, Defendant's Supplemental Objection to the Presentence Investigation Report (Doc. 106). This sentencing memorandum submission seeks a sentence below the PSR's proposed 2012 guideline advisory range and below any offense level range calculated pursuant to objections filed by the parties based on §3553(a) factors.

## Statutory Factors of 18, U.S.C., §3553(a)

Ultimately, the federal sentencing system is governed by 18, U.S.C., §3553(a). *United States v. Booker*, 543 U.S. 220 (2005). According to 18, U.S.C., §3553(a): "[t]he court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in" 18, U.S.C., §3553(a)(2). According to those enumerated purposes, an appropriate sentence should:

> (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18, U.S.C., §3553(a)

Section 3553(a) goes on to provide a list of seven factors for courts to consider in determining the appropriate sentence in addition to the general purposes set forth above. Those factors include:

2

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—[enumerates (A) – (D) set forth above]; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines] subject to any amendments made to such guidelines by act of Congress. . .; (5) any pertinent policy statement. . . issued by the Sentencing Commission. . . subject to any amendments made to such policy statement by act of Congress. . .; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;  and (7) the need to provide restitution to any victims of the offense.

18, U.S.C., §3553(a)

## I.     Nature and Circumstances of the Offense

Section 3553(a)(1) provides that in determining the appropriate sentence, courts should consider "the nature and circumstances of the offense."  The offense for which Stoller stands convicted is a serious one.  Stoller has admitted making a false statement in his Chapter 13 bankruptcy petition in which he failed to disclose his power of direction over a trust holding legal title to certain residential property located in River Forest, Illinois.  However, of importance here is the fact that Stoller filed a Chapter 13 bankruptcy petition, as opposed to a Chapter 7 bankruptcy petition.  (PSR, pg. 6, ln. 135-138)

The significance of a Chapter 13 filing is that under Chapter 13, the debtor proposes a plan to pay his creditors over a 3-to-5 year period.  This written plan details all of the transactions (and their durations) that will occur, and repayment according to the plan must begin within 30 to 45 days after the case has started.  During this period, his creditors cannot attempt to collect on the individual's previously incurred debt except through the bankruptcy court.  In general, the debtor gets to keep his property and allows the debtor to find a way to pay the

amount owed without losing his assets entirely.[1]  This contrasts with a Chapter 7 bankruptcy wherein the debtor is allowed to keep certain exempt property and other assets, if any, are liquidated by the interim trustee to repay creditors. Most liens, however (such as real estate mortgages and security interests for car loans), survive, whereas many types of unsecured debt are legally discharged by the bankruptcy proceeding.[2]  The implication of filing a Chapter 13, as opposed to a Chapter 7, being that Stoller did not entertain a bankruptcy filing as a means of perpetrating a general fraud upon creditors, but of entering into a plan to repay, at least in part, most of his creditors.

For its part, the government, in seeking a sentence at the high end of the sentencing range, focuses not on the crime for which the defendant stands convicted, but on a portrayal of Stoller as a villainous abuser of the legal processes of the federal court system.  Fully three-quarters of the Government's Position Paper for Sentencing (Doc. 69) excoriates Stoller for "bad judgment" and his "egregious and ceaseless abuse of the federal court system."  Gov't. Pos. Paper, at 3.  After particularizing Stoller's alleged abuses of the federal trademark laws and the civil processes of the federal courts in great length, the government posits that the Court should consider, for purposes of finding a sentence at the high-end of the sentencing range appropriate, the defendant's "spurious trademark litigation" and the fact that, "this case has exposed the defendant's court activity for what it truly is – an unscrupulous and self-centered war of attrition against those who refuse to be victimized by his assertion of fictitious intellectual property rights."  Gov't. Pos. Paper, at 7-8.

---

1 See, http://en.wikipedia.org/wiki/Chapter_13,_Title_11,_United_States_Code
2 See, http://en.wikipedia.org/wiki/Chapter_7,_Title_11,_United_States_Code

Seeking further justification for a lengthy sentence of imprisonment, the government reasons that, "[c]learly, defendant is in need of substantial deterrence. Defendant's repeated abuse of the Court system in this district has only come to an end because the Seventh Circuit has instituted a *Mack* bar against him." Gov't. Pos. Paper, at 8. This is the government's naked invitation to the Court to use the federal penal code as an adjunct to the *Mack* bar to prevent the defendant from pursuing "spurious trademark litigation." Undeniably, it would be an abuse of the federal criminal law to incarcerate an individual for the purpose of muzzling his pursuit of civil court remedies.

Lastly, in depicting Stoller as an individual likely to "reoffend in the future," the government the government offers the arguments that:

> First, defendant has filed for bankruptcy three times in the Northern District of Illinois (1994, 1998 and 2005), so there is a real possibility that he may seek bankruptcy relief in the future. Second, since the *Mack* bar only applies in the Northern District of Illinois, defendant may freely initiate civil litigation in the other district courts, and, in fact, he has done so (see PSR lines 729-737). Third, there exists a real possibility that defendant may attempt to use other persons or entities to re-assert his trademark rights.

Gov't. Pos. Paper, at 8-9.

Hence, the government has a tripartite basis for seeking a lengthy period of incarceration:

> 1. Deter the defendant from "seek[ing] bankruptcy relief in the future;
> 2. Deter the defendant from "initiat[ing] civil litigation in the other district courts"; and
> 3. Deter the defendant from "attempt[ing] to use other persons or entities to re-assert his trademark rights.

Although 18, U.S.C., §3553(a) authorizes a court, in considering the appropriate sentence, to consider the need to "protect the public from further crimes of the defendant," it does not, unsurprisingly, empower a court to incarcerate a defendant for the purpose of preventing a defendant from filing for bankruptcy, initiating civil litigation or asserting trademark rights. Reduced to its common denominator, the government's argument is that Stoller should be removed from society because he is a thorn in the side of the federal judiciary. This all said, the defendant maintains that he is simply a 67-year-old wheel-chair-bound man in poor health with no criminal history points who, in the government's own words, exercised "bad judgment" in making a false statement in his bankruptcy petition. The events surrounding the filing of the bankruptcy petition were truly episodic and Stoller's travails through the civil justice system have no place in these proceedings.

## II.     Defendant's Criminal History and Personal Characteristics

The Supreme Court recently confirmed that a defendant's history and characteristics are "clearly relevant to the selection of an appropriate sentence." *Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011) (citing § 3553(a)(1)). *Pepper* emphasized that a sentencing court must "consider every convicted person as an individual," *id*. at 1240, and must fashion a punishment that "fit[s] the offender and not merely the crime," *id*. (citations omitted). Stoller's history and character as well as the circumstances of the offense show that a lengthy sentence of imprisonment would not "fit" him. § 3553(a)(1).

### A.  Family

Stoller is divorced and has three children. Notably, Stoller's son, Michael, age 22, who resides with the defendant, suffers from attention deficit disorder, bipolar disorder, obsessive

6

compulsive disorder, psychotic affective disorder, schizophrenia, has no social skills and cannot care for himself.  (PSR, pg. 12, ln. 305-308) (Updated PSR (UPSR) pg. 3, ¶21)  Michael currently takes classes through the disability department at Truman College using a note taker.  (UPSR, pg. 3, ¶21)  Michael Stoller no longer maintains contact with his mother, Nancy Reich, and the defendant reported to the probation officer that he does not know who will care for his son if he is incarcerated.  (PSR, pg. 12, ln. 311-313)  However, Ms. Reich informed the probation officer that she would be willing to care for Michael and allow him to live with her should the defendant be sentenced to a term of imprisonment.  Ms. Reich further opined that the defendant convinced Michael to live with him so he could claim that he was caring for his dependant son in order to avoid a jail sentence.  (PSR, pg. 13, ln. 325-325, 332-333) (UPSR, pg. 3, ¶22)

Then again, the facts speak quite differently as to Ms. Reich's motivation and protestations. In a letter dated January 6, 2014, Michael states adamantly that he cannot live with his mother, Nancy Reich and that his father, Leo, is the only person willing and able to provide the love and support he needs.  Michael relates that he left his mother's home in June 2011 under the threat that she was going to have him institutionalized because she no longer wished to care for him.  Further documenting the complete estrangement from his mother, Michael relates that he recently instituted a replevin action against his mother to recover savings bonds that she is holding, but which bonds belong to Michael.  Lastly, Michael reports that he has been psychiatrically hospitalized in the last 30 days due to the emotional stress of the current events.  That attached hereto as "Exhibit A" is the letter of Michael Stoller dated January 6, 2014, and as "Exhibit B" a copy of the Complaint in Replevin filed by Michael against his mother, and as "Exhibit C" copies of the hospital records confirming Michael's recent hospitalizations.

As apparent here, there is direct conflict between the descriptions offered by Ms. Reich on one hand, and the portrayals offered by Stoller and his son Michael, on the other, as to which parent is capable of caring for Michael and willing and able to do so. However, an independent and unbiased appraisal of the situation has been offered by a licensed clinical social worker, Debra Fosco ("Fosco"), MSWLCSW, who has provided family treatment to Stoller and his son for over two and one-half years and is able to provide critical insight into the relationship between these two individuals. Fosco describes in great detail the defendant's unique ability to deal effectively with the myriad psychological disorders that Michael suffers from, opining that, "Mr. Stoller has been able to find a way into his son's subjective world without arousing too much anxiety about intrusion. I have witnessed Leo's concern and love for his son in that he is able to patiently tolerate Michael's confusing, off-putting messages while maintaining the determination to understand and help." Fosco letter, pg. 1. In concluding her opinion, Fosco offers this stark assessment if Stoller is separated from his son by imprisonment.

> Mr. Stoller understands and loves his son. He understands his autistic-like withdrawal into fantasy and fosters his capacities for authenticity and creativity though drawing. It is because of Mr. Stoller that Michael will be graduating with an associate's degree this year. If Mr. Stoller is incarcerated, I do not know what will happen to Michael. To my knowledge, his only home is with his father. Institutionalization of Mr. Stoller will inevitably cause institutionalization of Michael. Michael does not deserve this. What he does deserve is to continue to live with his father. A father who has learned to speak Michael's language, and understands and accepts his unconventional, eccentric and bizarre behaviors. I am concerned that Michael, if separated from his father, may become an institutionalized catatonic patient. Fosco letter, pg. 2.

That attached hereto as "Exhibit D" is the evaluation of Debra Fosco, dated November 14, 2013 (filed under seal).

**A-1. Stoller's Extraordinary Family Responsibilities Justify a Probationary or Home Confinement Sentence Under § 3553(a) and U.S.S.G. § 5H1.6.**

The Supreme Court and the Seventh Circuit have acknowledged that significant familial responsibilities provide a legitimate basis for imposing a below-guidelines sentence. See *Gall v. United States*, 552 U.S. 38, 59 (2007) (noting the government's acknowledgment at oral argument that compelling family circumstances might render a reduction from incarceration to probation appropriate). "Matters such as . . . family ties . . . are . . . matters that §3553(a) authorizes the sentencing judge to consider" and may serve as a basis for a below-guidelines sentence. *Rita*, 551 U.S. at 364–65 (Stevens, J., concurring). When faced with a request for a below-guidelines sentence based on family circumstances, the district court should inquire into the effect of the defendant's absence on his family members. See *United States v. Schroeder*, 536 F.3d 746, 756 (7th Cir. 2008) (reversing a within-guidelines sentence in part based on the court's failure to consider family circumstances); see also, *United States v. Edwards*, 2009 U.S. Dist. LEXIS 12440, at *14–18 (N.D. Ill. Feb. 17, 2009) (granting a below-guidelines request based in part on the fact that the defendant and his wife were supporting five children).

Stoller merits a below-guidelines sentence under §3553(a) and U.S.S.G. §5H1.6. Section 5H1.6 allows a downward departure where there is "loss of caretaking or financial support of the defendant's family." § 5H1.6, app. note 1(B).[3] Without Stoller, his son Michael will suffer both kinds of loss. A sentence of imprisonment will "cause a substantial, direct, and specific loss" to Stoller's son that "substantially exceeds the harm ordinarily incident to incarceration." U.S.S.G. §

---

3 Under § 5H1.6, the Court must first consider the following circumstances: (1) the seriousness of the offense; (2) the involvement in the offense, if any, of members of the defendant's family; and (3) the danger, if any, to members of the defendant's family as a result of the offense. While this offense is serious, none of his family members were involved in it. Furthermore, his family is not in any danger as a result of the offense.

5H1.6, app. note 1(B)(i), (ii). Michael will suffer irreparable harm if Stoller goes to prison. Exs. A and D. Stoller's son relies exclusively on him for the psychological support he needs to allow him to function outside of an institutional setting.

Indeed, Stoller's emotional support for his son is "irreplaceable" as that term was understood by the *Edwards* court because Stoller's separation from his son will have a "traumatic effect" on him. 2009 U.S. Dist. LEXIS 12440 at *17.

Even under the more stringent pre-*Booker* sentencing standards, it was well established that "Courts may grant a downward departure for 'extraordinary family circumstances' where the defendant's children or other family members are unusually dependent upon the defendant and could face serious mental or physical problems if separated from the defendant." *United States v. Locke*, 2003 U.S. Dist. Lexis 17510 (N.D. Ill. Oct. 2, 2003) (Manning, J.). Moreover, "[t]he intended beneficiary of a family circumstances departure is not the defendant but his dependents. Sentencing courts must therefore focus on the vulnerability of these dependents, assessing the hardships that a sentence of incarceration would impose on them." *United States v. Greene*, 249 F. Supp. 2d 262, 266 (S.D.N.Y. 2003)(citation omitted). In this vein, "when a defendant presents an argument for a lower sentence based on extraordinary family circumstances, the relevant inquiry is the effect of the defendant's absence on his family members." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999).

In light of these facts, it is clear that Leo Stoller's continued presence and involvement in Michael's day-to-day care is essential to his well-being. Extraordinary family circumstances departures on the bases of "caretaking responsibilities" or "necessary emotional support" have been granted in a host of cases, including any number with facts arguably less compelling than those

presented here. *E.g.*, *United States v. Bueno*, 549 F.3d 1176, 1178 (8th Cir. 2008)(affirming downward variance from Guideline range of 108-135 months to sentence of 5 years supervised release because defendant's wife suffered from lupus and required his daily help in order to thrive); *United States v. Locke*, 2003 U.S. Dist. Lexis 17510 (N.D. Ill. Oct. 2, 2003)(granting departure where defendant had an 8-year old son who had suicidal thoughts, and based on social worker's statement that any separation from his mother would cause crisis even if he were to live with his grandmother); *United States v. Haversat*, 22 F.3d 790, 797 (8th Cir. 1994)(affirming downward departure where defendant's wife suffered severe psychiatric problems, defendant was her only caregiver, and her doctor said his presence was needed to notice deteriorations in her health and her safety would be at risk if he were incarcerated); *United States v. Sclamo*, 997 F.2d 970, 974 (1st Cir. 1993)(affirming downward departure where defendant was a father figure for his girlfriend's teen son who had been abused by his biological father and any absence of the defendant would risk deterioration to the boy's health).

B. **Criminal History**

The circumstances of Stoller's offense and his lack of any criminal history show that a lengthy prison sentence is unnecessary to protect the public or to punish him. It is worth noting that even before accounting for Stoller's social utility while not in prison, the annual cost of imprisoning him is $26,163 – and likely a multiple of this amount considering Stoller's medical and psychiatric issues. §3553(a)(2)(A)–(C); (PSR pg. 20, ln. 552-554)

Stoller's lack of any serious criminal history coupled with his personal characteristics such as his age indicate that he is statistically very unlikely to reoffend. The PSR indicates that Stoller has only one conviction, which was for a misdemeanor occurring in 1985 and which Stoller does

11

believe he sustained.  By defendant's count, he has zero criminal history points and has never been

to prison before.  (PSR pg. 9, ln. 218-232)  The Sentencing Commission has found that 90 percent

of people in Stoller's age group and Criminal History Category I do not re-offend.[4]  Of all

offenders, those with zero criminal history points are significantly less likely to recidivate, and

criminal history points are the "purest form in which the guidelines measure recidivism risk." *Id.*

### D. Health

Stoller's health also militates against any sentence of imprisonment.  Stoller is 67 years old

and suffers from a host of serious medical and psychiatric problems:

- Congestive heart failure and high blood pressure – first diagnosed in 2005;
- Enlarged bladder -- first diagnosed in 2008; and
- Hperlipidemia (abnormally elevated levels of lipids (fat-soluble molecules) in the blood) and non-obstructive coronary heart disease.

(PSR, pg. 14, ln. 381-388)

More recently, the UPSR notes the following additional medical problems:

- Hospitalization for dementia in November 2012;
- Diagnosed with Alzheimer's disease and dementia in December 2012;
- An additional diagnosis of coronary artery disease, chronic heart failure, hypertension and osteoarthritis in July 2013;
- Surgery for an abdominal aneurism in February 2013 and from which the defendant still suffers postoperative complications including critical illness myopathy (neuromuscular/musculoskeletal disease) and acute kidney injury;
- Confinement to a wheelchair since his surgery in February 2013.

(UPSR, pg. 4, ¶¶25-29)

Additionally, since the UPSR dated October 1, 2013, the defendant had foot surgery on

November 15, 2013, and as of December 30, 2013, still needs four weeks of therapy.  This surgery

---

4 U.S. Sent'g Comm'n, Measuring Recidivism:  The Criminal History Computation of the Federal Sentencing Guidelines, at 12, available at http://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_Criminal_History.pdf.

has further reduced the probability that Stoller will be able to ambulate on his own and likely faces a long confinement to the use of a wheel chair. That attached hereto as "Exhibit E-1 and E-2" are letters from the defendant's podiatrist, Dr. Alexander Yanovskiy.

Lastly, a psychiatric evaluation conducted on August 1, 2012, by Dr. Susan Pearlson, M.D. found that Stoller suffers from major depressive disorder, posttraumatic stress disorder, panic disorder and narcissistic personality disorder. Dr. Pearlson opined that Stoller would not receive the psychiatric care he requires within the BOP because, "[e]valuation and treatment of mentally ill inmates is often ineffective due to lack of funding, inadequate staffing, lack of training, and lack of procedures to identify and follow the needs of prisoners." Dr. Pearlson further opined that, if incarcerated, "[a]t best, his [Stoller's] mental health would remain stable. It is more likely that lack of treatment combined with the stress of incarceration would result in a decline in his mental health that would go unnoticed and untreated." Pearlson Evaluation, pg. 5. That attached hereto as "Exhibit F" is the evaluation of Dr. Pearlson, dated August 1, 2012 (filed under seal).

In light of Stoller's serious medical and psychiatric problems, the defendant suggests that the Court consider the need to provide the defendant with medical care in the "most effective manner." 18 U.S.C. §3553(a)(2)(D). Moreover, §5H1.4 of the guidelines explains that while a defendant's physical condition is not ordinarily relevant, an "extraordinary physical impairment" may be a reason for a below-guidelines sentence. U.S.S.G. § 5H1.4 (Policy Statement) ("extraordinary physical impairment may be a reason to depart downward; *e.g*., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment." U.S.S.G. § 5H1.4. This statement clearly suggests that home confinement may be a cost-effective alternative to imprisonment for seriously infirm defendants. Stoller contends,

13

based on the foregoing description of his ailments, that he is seriously infirm and that home confinement offers a reasonable alternative to incarceration.  See, *United States v. Poetz*, 582 F.3d 835, 838 (7th Cir. 2009)

Even when the U.S. Sentencing Guidelines were considered mandatory, downward departure was authorized under USSG Section 5H1.4 for "extraordinary physical impairment":

> • *United States v. Willis,* 322 F.Supp.2d 76 (D.Mass. 2004) (downward departure to 2 years probation warranted for defendant convicted of tax evasion because defendant was 69 years old and suffering from a combination of conditions including phlebitis, early stage chronic lymphocytic leukemia, colon polyps, hypercholesterolemia, and heart murmur.);

> • *United States v. Jimenez,* 212 F.Supp.2d 214, 216 (S.D.N.Y. 2002) (defendant convicted of illegally reentering U.S. after deportation received downward departure for extraordinary physical impairment because after the offense she suffered a brain aneurism that resulted in severe memory loss, loss of strength in her right arm, headaches, blurred vision and hallucinations);

> • *United States v. Blarek,* 7 F.Supp.2d 192 (E.D.N.Y. 1998) (defendant convicted of conspiracy to commit racketeering and money laundering granted downward departure to three years of supervised release because of HIV-positive status);

> • *United States v. Rioux,* 97 F.3d 648 (2d Cir. 1996) (upholding downward departure based on physical condition and good works for a defendant convicted of violation of the travel act and scheme to commit extortion; defendant had received a kidney transplant 20 years prior, and the new kidney was diseased requiring regular blood tests and medicines, and the defendant also received a double hip replacement requiring monitoring);

> • *United States v. Long,* 977 F.2d 1264 (8th Cir. 1992) (upholding probation for defendant convicted of money laundering whose extraordinary physical impairment left him vulnerable to victimization in prison); and

14

> • *United States v. Baron,* 914 F.Supp. 660 (D.Mass. 1995) (age and physical ailment of 76–year–old defendant, convicted of bank fraud, warranted downward departure to home detention and probation where defendant had cardiac condition and pituitary removed due to cancer, and was suspected of having prostate cancer).

Finally, in the UPSR the probation officer notes that the probation office is in possession of a letter from an attorney by the name of Michael Gaulthier dated July 13, 2013. In his letter, Mr. Gaulthier attempts to hold Stoller responsible for the fact that his (Stoller's) attorney, Aaron Penna, was held in direct criminal contempt of court in McHenry County because of conduct by Stoller. Legally, this scenario is nonsensical for the reason that a court could not hold an attorney in direct criminal contempt because of the actions of the attorney's client. Moreover, counsel for the defendant received an email from Mr. Penna in which he absolved Stoller of any responsibility for the finding of contempt. That attached hereto as "Exhibit G" is a copy of the email from Mr. Penna dated December 23, 2013.

In light of the foregoing, it is respectfully suggested that a sentence significantly below the lowest advisory Guidelines range is manifestly sufficient punishment for Stoller and for this Court to accomplish all of the goals identified in Section 3553(a). Such a sentence would protect the public, provide a general deterrence, promote respect for the law, and would not deprecate the seriousness of the offense.

WHEREFORE, for the reasons stated above, defendant, Leo Stoller, respectfully requests that this Court impose a lower sentence based upon §3553(a) factors.

Respectfully submitted,


_____s/ John A. Meyer_____
John A. Meyer, attorney for
defendant, Leo Stoller


John A. Meyer
Meyer & O'Connor, LLC
135 S. LaSalle Street
Suite 3300
Chicago, Illinois 60603-4134
(312) 346-9000

16

## CERTIFICATE OF SERVICE

I, John A. Meyer, an attorney, state that I caused to be filed, by electronic filing (ECF), with the Clerk of the United States District Court for the Northern District of Illinois, the foregoing Sentencing Memorandum.

The undersigned also certifies, as to the following parties, that in accordance with F.R.Civ.P. 5, LR 5.5 and the General Order on Electronic Case Filing (ECF), the foregoing pleading, along with a notice of motion if required, were served pursuant to the district court's ECF system as to ECF filers, if any, and were sent by first–class mail on January 10, 2014, to the non-ECF filers:

> AUSA Timothy J. Chapman
> United States Attorney's Office
> 219 S. Dearborn St.
> Chicago, IL 60604

____s/ John A. Meyer_____<br>John A. Meyer, Attorney for<br>defendant